# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-239

NAOMI WILLIAMS

VERSUS

ARISTA ANDRUS, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20086308
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Harold D. Register, Jr.
Post Office Box 80214
Lafayette, LA 70598-0214
(337) 981-6644
COUNSEL FOR PLAINTIFF/APPELLANT:
   Naomi Williams**

**Gerald A. Melchiode
Mary E. Lorenz
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
(504) 525-6802
COUNSEL FOR DEFENDANT/APPELLEE:
   Markel International Insurance Company, LTD**

AMY, Judge.

After an altercation, the plaintiff's husband was shot and killed at a bar. The plaintiff subsequently filed suit against the alleged gunman, and his accomplice, the bar, and the owners and operators of the bar. The bar's insurance company intervened and filed a motion for summary judgment, contending there was no coverage under its policy because of its "assault and battery" exclusion and/or "firearms" exclusion. The trial court granted the motion and entered judgment declaring that there was no coverage under the policy and dismissing all claims against the insurer. The plaintiff appeals, asserting that the trial court erred in granting the motion for summary judgment. For the following reasons, we affirm. We grant no relief as to the intervenor's requests for dismissal and sanctions.

**Factual and Procedural Background**

According to allegations made in the petition, the plaintiff, Naomi Williams, and her husband, Treva Williams, were patrons of the Quality Lounge in Carencro, Louisiana. While at the bar, Mr. Williams and Briceton Gallien were allegedly involved in a "huge fight." The plaintiff alleges that, after the altercation, the management of the Quality Lounge escorted Gallien and several other patrons from the bar, but did not call the police. According to the plaintiff, there was no security at the bar. The petition indicates that, accompanied by Jarvis Angelle, Gallien returned to the bar sometime later that evening. Gallien allegedly pointed at Mr. Williams and shouted, "[T]here he is." The plaintiff alleges that Angelle shot Mr. Williams in the chest; Mr. Williams was pronounced dead later that evening. The record indicates that Gallien and Angelle were subsequently charged criminally with second degree murder in connection with the shooting.

Mrs. Williams, individually and on behalf of her two minor children, filed this suit against Gallien and Angelle, the Quality Lounge, and its owners and

operators. Markel International Insurance Company, Ltd. filed a petition for intervention, asserting that it had issued a commercial general liability policy to the Quality Lounge and that there was no coverage under the policy.

Markel subsequently filed a motion for summary judgment, contending that there was no coverage under the policy due to an "assault and battery" exclusion and a "firearms" exclusion contained in the policy. After a hearing, attended only by the attorney for Markel, the trial court granted the motion and entered judgment pronouncing that there was no coverage under the policy and dismissing all claims against Markel.[1]

The plaintiff appeals, asserting that "[t]he trial court erroneously concluded there was no genuine issue of material fact as to the ambiguity of an insurance policy that excludes coverage for assault and battery and incidents committed with a firearm, but fails to exclude coverage for murder."

Markel, in brief, urges this court to dismiss the appeal based on the plaintiff's failure to timely pay the costs of appeal and seeks sanctions for the plaintiff's alleged failure to serve the intervenor with a copy of its appellate brief.

**Discussion**

Louisiana Code of Civil Procedure Article 966 addresses motions for summary judgment. It states, in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and is

---

[1] The trial court's judgment, signed August 30, 2010, states that the trial court "finds that there is no coverage under the commercial general liability policy, number GGAGL 3373, issued by Markel International Insurance Company, Ltd. to Theresa Dean d/b/a Quality Lounge for Plaintiff's claims as a matter of law and that all claims against Markel International Insurance Company, Ltd. are dismissed, with prejudice, at Plaintiff's cost."

2

"designed to secure the just, speedy, and inexpensive determination" of civil actions. La.Code Civ.P. art. 966(A)(2). Summary judgment is also an appropriate procedure for determining certain insurance coverage issues. *Sensebe v. Canal Indem. Co.*, 10-703 (La. 1/28/11), 58 So.3d 441 (citing *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024).

On appeal, summary judgments are reviewed de novo. *Sensebe*, 58 So.3d 441. When reviewing a trial court's disposition of a motion for summary judgment, an appellate court should apply "the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Id.* at 445. Where addressing whether an exclusion precludes insurance coverage, the appropriate questions are "(1) whether the exclusion is clear and unambiguous; (2) whether the exclusion applies to the facts of this case; and (3) whether there are any genuine issues of material fact precluding summary judgment." *Proshee v. Shree, Inc.*, 04-1145, p. 3 (La.App. 3 Cir. 2/2/05), 893 So.2d 939, 942.

A panel of this court recently reiterated the principles of insurance contract interpretation in *Burns v. Couvillion*, 10-763 (La.App. 3 Cir. 12/8/10), 53 So.3d 540. This court stated:

> "An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles." *Orazio v. Henderson*, 01-28, p. 2 (La.App. 3 Cir. 7/11/01), 790 So.2d 754, 755 (quoting *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 3 (La. 1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La. 4/18/96), 671 So.2d 915). Additionally, "[t]he contract has the effect of law for the parties. La.Civ. Code art. 1983." *Id.* When the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the party's intent. *Hill v. Shelter Mut. Ins. Co.*, 05-1783, 05-1818 (La. 7/10/06), 935 So.2d 691. A court should not strain to find ambiguity where none exists. *Hebert v. Webre*, 08-60 (La. 5/21/08), 982 So.2d 770.

*Id.* at 546. However, "[e]xclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the

insured." *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La. 4/18/96), 671 So.2d 915.

*The "Assault and Battery" Exclusion*

A copy of the commercial general liability policy is contained in the record. The "assault and battery" exclusion therein states:

> The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or discretion of any Insured or Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2, Exclusions, a.

The plaintiff asserts that the assault and battery exclusion is ambiguous because it fails to define "bodily injury" and since it only applies to "assault and/or battery" and not wrongful death actions as a result of "murder." Markel contends that although "the assault and battery exclusion does not specifically include murder," there is no requirement that the exclusion enumerate the multiple possibilities encompassed by the exclusion. Markel also notes that "bodily injury" is defined elsewhere in the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

In *Bennett v. Ragon*, 04-706, p. 7 (La.App. 1 Cir. 3/24/05), 907 So.2d 116, 120-21 (citations omitted), the first circuit explained that:

> In the civil context . . . assault is generally defined as the "threat of a battery." Battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact." . . . .
>
> In the criminal context, Louisiana Revised Statutes 14:33 defines battery as "the intentional use of force or violence upon the

4

person of another." Louisiana Revised Statutes 14:36 defines assault as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."

We find no merit in the plaintiff's assertion that the failure to include "murder" in the assault and battery exclusion bars its application to the facts of this case. The supreme court addressed the applicability of assault and battery exclusions to other criminal conduct in *Ledbetter*, 665 So.2d 1166. Therein, the supreme court quoted the United States Court of Appeals for the Second Circuit, stating:

> While it is true that ambiguities are often construed against insurers, a clause may be general without being ambiguous, and even a vague clause may be ambiguous only at its edges. It is neither possible nor desirable for an insurance contract to enumerate the various kinds and degrees of attacks encompassed by the assault and battery exclusion. The clause need not mention rape or strangulation or mayhem, or other greater or lesser invasions of the person; all are subsumed in the broad language employed.

*Ledbetter*, 665 So.2d at 1170 (quoting *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105 (2d Cir. 1993)).

In *Ledbetter*, the supreme court addressed whether a rape and kidnapping perpetrated against a hotel patron was included within the ambit of a similarly-worded "assault and battery" exclusion. Although assault, battery, and rape are separately codified offenses under the criminal law, the supreme court noted that the same criminal act can constitute a violation of multiple criminal statutes, even if double jeopardy would prevent their prosecution. *Id.* The supreme court concluded that, because a rape "necessarily requires the intentional use of force and/or violence upon the person of another," the assault and battery exclusion was unambiguous and precluded coverage for the rape. *Id.* at 1170. However, the supreme court also concluded that, because kidnapping does not necessarily involve the use of force and/or violence upon the person of another, the policy was

5

ambiguous as applied to the facts of that case. *Id.*

In *Bennett*, 907 So.2d 116, the plaintiff brought suit as the result of the shooting, and eventual death, of a bar patron by the bar's owner during an apparent robbery attempt by the patron. The first circuit noted that "the facts clearly demonstrate [the bar owner] intended an offensive contact when he fired the shotgun." *Id.* at 121. The first circuit ultimately concluded that a similarly-worded assault and/or battery exclusion precluded coverage under the bar's commercial general liability policy, finding that the wrongful death action arose from the bar owner's assault and/or battery of the decedent. *See also Law v. B.Z. Enter. One, Inc.*, 96-0537 (La.App. 1 Cir. 12/20/96), 684 So.2d 1121; *Gaspard v. Northfield Ins. Co.*, 94-510, 94-511 (La.App. 3 Cir. 11/2/94), 649 So.2d 979, *writ denied*, 94-2906 (La. 2/9/95), 650 So.2d 1166.

Despite the plaintiff's contention that the ambiguity of the assault and battery clause creates a genuine issue of material fact, the basic facts of this case are not in dispute by the parties. The assault and battery exclusion clearly and unambiguously precludes coverage for "any claim, suit, cost or expense arising out of assault and/or battery." As alleged by the plaintiff, the facts indicate that Angelle clearly intended an offensive contact when he shot at Mr. Williams. The unfortunate fact that Mr. Williams was killed as a result of the offensive contact does not negate that the claim arises from an assault and/or battery by Angelle. Further, although the criminal charges of second degree murder are far more serious than those of assault and battery, we note that "[i]t is neither possible nor desirable for an insurance contract to enumerate the various kinds and degrees of attacks encompassed by the assault and battery exclusion. The clause need not mention rape or strangulation or mayhem, or other greater or lesser invasions of

6

the person; all are subsumed in the broad language employed." *Ledbetter*, 665 So.2d at 1170. Therefore, we find no error in the trial court's determination that the assault and battery clause precludes coverage under the policy.

*The Firearms Exclusion*

Further, the insurance policy's "firearms" exclusion states, "[t]his insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury" or medical payments arising out of the ownership, rental, maintenance, use or misuse of any firearms."

Here too, the plaintiff contends that the exclusion is ambiguous because it does not exclude coverage for wrongful death or death resulting from the commission of a felony. We find the plaintiff's argument to be without merit. The record indicates that the plaintiff's claims arise out of the allegations that Angelle used a firearm to shoot Mr. Williams on the premises of the Quality Lounge. Applying the principles of *Ledbetter*, 665 So.2d 1166, and *Bennett*, 907 So.2d 116, we conclude that the terms of the policy are clear and unambiguous. Therefore, we find that there was no error in the trial court's determination that coverage is precluded under the policy's firearms exclusion.

This assignment of error is without merit.

*Request for Sanctions*

In brief, Markel requests sanctions and penalties for the plaintiff's alleged failure to abide by Uniform Rules—Courts of Appeal, Rule 2–14.1 and Uniform Rules—Courts of Appeal, Rule 2–14.2. Markel alleges that the information listed in the plaintiff's certificate of service is incorrect. Markel also alleges that it received a copy of the plaintiff's brief "more than a week after it was filed," and only after Markel's attorney made several telephone requests for a copy. Counsel

7

for the plaintiff contends that he accidentally sent a copy of the brief to another attorney instead of Markel's attorney. He argues that Markel was "never impaired or harmed by this minor clerical oversight" and that he should not be penalized.

Uniform Rules—Courts of Appeal, Rule 2–14.1 provides that "[l]egible copies of all papers filed in a Court of Appeal by any party shall, at or before the time of filing, be delivered or mailed by the party to all other parties, or counsel of record." Uniform Rules—Courts of Appeal, Rule 2–14.2 further requires that a "certificate listing all parties and all counsel, indicating the parties each represents, and showing how and when such service was accomplished" shall be included. Neither Rule 2–14.1 nor Rule 2–14.2 authorizes sanctions for a party's failure to comply with their requirements. Furthermore, Markel's request is made in its appellate brief, not by the filing of a motion.[2] *See Newman v. Richard Price Constr.,* 02-995 (La.App. 1 Cir 8/8/03), 859 So.2d 136; *Econ. Auto Salvage Inc. v. Allstate Ins. Co.,* 499 So.2d 963 (La.App. 3 Cir.), *writ denied*, 501 So.2d 199 (La.1986) (finding that a motion to strike is the proper procedural device to strike improper evidence from the appellate record). Accordingly, we grant no relief in this assignment.

*Motion to Dismiss*

In its appellate brief, Markel contends that this appeal should be dismissed as premature due to a pending motion to dismiss filed in the trial court. Markel asserts that its motion to dismiss was filed after Mrs. Williams failed to timely pay the estimated costs of the appeal. However, both parties state in their briefs to this court that the costs were paid on February 1, 2011. Mrs. Williams filed a reply brief opposing the request to dismiss the appeal.

---

[2] Pursuant to Uniform Rules—Courts of Appeal, Rules 2–7.1 and 2–7.2, the Courts of Appeal may consider motions.

The record indicates that the motion to dismiss was filed in the trial court and that the related hearing was continued until March 21, 2011. Although the record was lodged in this court on February 28, 2011, it is silent as to any further actions taken on the motion to dismiss. However, according to the parties, the appeal costs were paid prior to any hearing on the motion. *See Lao. Bd. of Massage Therapy v. Fontenot*, 04-1525 (La.App. 3 Cir. 5/4/05), 901 So.2d 1232.[3] In light of the procedural posture in which this matter now appears before this court, we do not address Markel's contention that this appeal should be appropriately dismissed insofar as the issue became moot upon the payment of costs. *Id*.

## DECREE

For the foregoing reasons, we affirm the summary judgment of the trial court finding that there is no coverage under the commercial general liability policy, number GGAGL 3373, issued by Markel International Insurance Company, Ltd. to Theresa Dean d/b/a Quality Lounge for the plaintiff's claims as a matter of law and dismissing all claims against Markel International Insurance Company, Ltd. Costs are assessed to the plaintiff, Naomi Williams. We grant no relief as to the intervenor's requests for dismissal and sanctions.

**AFFIRMED.**

---

[3] We note too that Markel did not file a motion to dismiss in this court urging that the appeal was premature. Instead, it only advances this argument in its brief. *See Fontenot*, 901 So.2d 1232; *Richards v. Everett*, 509 So.2d 851 (La.App. 4 Cir. 1987).