DANIEL L. DYSART, Judge.
|,Century Surety Company seeks review of the judgment of the trial court granting summary judgment against it. For the reasons that follow, and based upon our de novo review of the record, we find that the trial court erred in granting the motion for summary judgment. Accordingly, we reverse the trial court’s judgment and remand this matter for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On August 13, 2010, Plaintiff, Jorge Es-pinosa, was robbed and shot in the parking lot of the Motel 6, located at 4200 Old Gentilly Road in New Orleans, Louisiana, where he was a guest and staying for business purposes. He survived the attack and filed the instant lawsuit on July 25, 2011, for personal injuries, including paralysis. Named as defendants are:
• Accor North America, Inc. d/b/a Motel 6; Accor Franchising North America, LLC, d/b/a Motel 6; Motel 6 Operating LP, d/b/a Motel 6, each of which is identified as foreign corporation or foreign partnership which “owned, leased and/or operated and/or managed” the motel;[1]
• Bayou Hospitality, LLC (“Bayou”), alleged to be the owner of the property located at 4200 Old Gentilly Road;
b* A fictitious security company;
• A yet-to-be-identified employee of defendants; and
• Several fictitious insurers.
In his suit, plaintiff alleges that the defendants “were aware of the high rate of violent and other crimes on and around the premises” and that “several known criminals frequently loitered on the premises.” However, according to plaintiff, the defendants failed to warn him of the dangers of the area, failed to provide adequate security and failed to take measures to insure the safety of their patrons.
Arch Insurance Company (“Arch”), the worker’s compensation carrier for plaintiff’s employer, TradeSource, Inc., intervened in the lawsuit on August 11, 2011, seeking to recover the amounts it paid in medical expenses and indemnity benefits. At the time it filed the Intervention, those sums amounted to $1,999,561.80. Arch named as defendants in intervention those parties identified in the original Petition for Damages.
A Second Petition of Intervention was filed on December 15, 2011 by Century Surety Company (“Century”), which insured Bayou at the time of the underlying incident.[2] In its intervention, Century sought a declaration that its policy limits coverage to $25,000 per occurrence based on an endorsement to the policy’s assault and battery exclusion. It further sought a declaration that its obligation to defend and/or indemnify Bayou ended when it exhausted its $25,000 limit by virtue of a policy provision which reduces coverage by the payment of expenses incurred in investigating and defending the underlying action.[3]
|sIn a first amending petition filed on May 21, 2012, plaintiff added Century and *248 Federal Insurance Company (“Federal”), the excess and umbrella insurer of Bayou, as defendants. In a second amending petition, plaintiff added Arch as a direct defendant.
On October 30, 2012, plaintiff filed a Motion for Partial Summary Judgment seeking a determination that Century’s policy affords $1 million in liability coverage to Bayou. Accor then filed its own Motion for Partial Summary Judgment, joining in plaintiffs Motion for Summary Judgment and also seeking a determination that there is $1 million of coverage under Century’s policy. Bayou later joined in these motions. A hearing was held on the motions and, by judgment dated February 14, 2013, the motions were denied.[4]
On April 26, 2013, Bayou filed a Cross-Claim against Century, asserting that Century’s policy provides policy limits of $1 million for the claims asserted by plaintiff. Bayou further asserted that Century owed it a defense in this litigation. Bayou then filed a Motion for Summary Judgment on June 17, 2013 against Century, asserting that, although Century had paid $25,000, it still owed Bayou a defense because of the claims asserted in the lawsuit pertaining to Bayou’s alleged failure to secure its premises. It argued that, under the policy’s premises liability provision, coverage is provided separate and apart from the assault and battery claims. Bayou essentially sought a reconsideration by the trial court of coverage under Century’s policy.
14After obtaining leave of court, Accor filed a Third Party Demand against Colonial Insurance Agency, Inc. (“Colonial”), in which it asserted that Colonial procured the Century policy for Bayou, but “negligently misrepresented to Accor that it was named as an additional insured under the policy.” Accor alleged that Colonial provided it with a “Certificate Holder” indicating that it was an additional insured.
On August 20, 2013, plaintiff filed two Motions for Partial Summary Judgment. The first addressed the issue of comparative fault; plaintiff maintained that defendants are not entitled to submit a comparative fault instruction to the jury, whereby the jury could allocate fault between the owner of the motel and the person who robbed and shot plaintiff. The second motion sought a determination that Century’s policy provided coverage for the allegations related to the failure to maintain a safe and secure premises, claims plaintiff maintained were separate and distinct from the assault and battery claims. Ac-cor joined in plaintiffs second Motion, as well as Bayou’s June 17, 2013 Motion for Partial Summary Judgment.
A hearing was held on the Bayou’s, Ac-cor’s and plaintiffs Motions for Partial Summary Judgment on September 20, 2013. By judgment dated October 10, 2013, the trial court granted summary judgment as follows: (1) in favor of Bayou as to the issue of defense costs, ordering Century to pay “past, present and future reasonable and necessary attorney’s fees and costs” in representing Bayou; and (2) in favor of Bayou, Accor and plaintiff on the issue of coverage under Century’s policy, finding that the policy provides coverage with limits of $1,000,000 “for the claims made by plaintiff in the Petition for Damages against Bayou Hospitality, L.L.C.” No reasons for judgment were assigned.
|sThe trial court designated the October 10, 2013 judgment as final pursuant to La. *249 C.C. Pr. art. 1915(B)(1).[5] Century timely appealed that judgment.

Standard of Review

Appellate courts review judgments granting partial summary judgment under the de novo standard of review. Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mut. Fire Ins. Co., 07-1118, 07-1209, 07-1310, p. 8 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75. In this review, the appellate courts use the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Ramos v. Tulane Univ. of La., 06-0487, p. 3 (LaApp. 4 Cir. 1/31/07), 951 So.2d 1267, 1269, citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/05/94), 639 So.2d 730, 750. Thus, a motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to summary judgment as a matter of law.” La. C.C. Pr. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. La. C.C. Pr. art. 966(A)(2).
Summary judgment is particularly appropriate in the context of insurance coverage issues. As the courts have consistently held, the “[ijnterpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.” Bernard v. Ellis, 11-2377, p. 9 (La.7/2/12), 111 So.3d 995, 1002; Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910.
Here, the material facts giving rise to the litigation are undisputed; the interpretation of Century’s insurance policy is purely a question of law and, therefore, appropriate for summary judgment resolution.

Policy provisions

The policy at issue in this matter provides commercial general liability (“CGL”) coverage to Bayou. The policy’s insuring agreement states that Century will pay “those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury' or ‘property damage’ to which this insurance applies.” The insuring agreement further provides that Century has “the right and duty to defend the insured against any ‘suit’ seeking those damages.”
The policy contains an assault and battery exclusion, form CGL 1704, which excludes coverage for “ ‘bodily injury,’ ... arising out of or resulting from:
(a) any actual, threatened or alleged assault or battery;
(b) the failure of any insured or anyone else for whom the insured is or could be held legally liable to prevent or suppress any actual assault or battery;
(c) the failure of any insured or anyone else for whom the insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;
(d) the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;
(e) the negligent:
(i) employment;
(ii) investigation;
(iii) supervision;
*250 (iv) training;
[/(v) retention
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by l.(a), (b), (c), or (d) above;
(f) any other cause of action or claim arising out of or as a result of l.(a), (b), (c), (d), or (e) above.”
The assault and battery exclusion limits Century’s duty to defend and indemnify as well, by providing in subpart 2 as follows:
2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:
(a) any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.
(b) any actual or alleged injury arises out of a chain of events which includes assault or battery regardless of whether the assault and battery is the initial precipitating event or a substantial cause of injury.
(c) any actual or alleged injury arising out of assault and battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.
The policy is further modified by an endorsement which “changes the policy” (hereafter referred to as “the Endorsement”). The Endorsement, Form 1717a, entitled “Limited Coverage-Assault & Battery” “modifies insurance provided under the ... COMMERCIAL GENERAL LIABILITY COVERAGE PART” as follows:
A. It is agreed that:
1. The specific coverage excluded under CGL 1704 is reinstated on a limited basis per the following additional terms and conditions.
|sa. This endorsement does not create any additional coverage or remove any exclusion contained in the other forms of this policy unless specifically stated on this form.
b. We will pay, with respect to any claim we investigate or settle, or any “suit” against an insured we defend, the expenses we incur associated with the coverage provided by this form. These expense payments will reduce the limits of insurance available and provided by this form.
c. Our right and duty to defend ends when we have used up the applicable limit of insurance shown below in the payment of judgments or settlements or expenses for the coverage provided by this form.
d. When the limit shown below exhausts from the payment of any claim, judgment or expense; or when the aggregate limit exhausts, you agree to take over the further handling of the affected claims and to pay all expenses incurred, including attorney fees, from the date of the payment that exhausts the policy limit until the affected claims or suits are resolved. You further agree to settle, pay any judgment, or otherwise resolve at your expense any claims or suits pending after the exhaustion of the policy limits. In anticipation of and in preparation for assuming the defense and indemnity upon exhaustion of limits stated below, you and your attorneys will, upon request, be given access to our claim and suit files other than records relating *251 to resolution of coverage issues or related to any dispute with you, within a reasonable time prior to exhaustion of the limits shown below.
2. Item A. 8. Failure to Maintain Secure or Safe Premises in CGL 1701[6] is not applicable to claims |flarising out of assault and battery defined in C. Definitions below.
B. Limits
Assault and Battery Limit of Insurance-$25,000 per “occurrence”
Assault and Battery Aggregate Limit-$50,000
1. The reinstated coverage has a reduced Limit of Insurance per “occurrence” as shown above.
2. The reinstated coverage is subject to an aggregate limit. The Assault and Battery Aggregate limit shown above is the most we will pay for all coverage reinstated by this endorsement.
3. The coverage provided by this endorsement does not provide additional limits of insurance above the General Aggregate Limit shown in the declarations. The coverage provided by this endorsement will reduce the General Aggregate Limit shown in the declarations.
C. Definitions
The above limits are applicable to a covered loss arising from an assault and battery. For the purpose of determining when the limits apply, the following definitions will be used:
1. Assault is an intentional, unlawful threat of bodily harm under circumstances creating a well-founded fear of imminent harm.
2. Battery is any unlawful and unprivileged touching of another person.
All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged. (Emphasis supplied.)
| interpretation of Insurance Policies
Our jurisprudence regarding the interpretation of insurance contracts is well-settled. We note initially that ‘“liability under a comprehensive liability policy is only as provided in the policy and the attached endorsements.’” In re McDermott Inc., 03-1960, 03-1961, 03-1962, 03-1963, p. 5 (La.App. 4 Cir. 5/19/04), 875 So.2d 863, 866, quoting Michelet v. Scheuring Security Services, Inc., 95-2196, p. 11 (La.App. 4 Cir. 9/4/96), 680 So.2d 140, 147. Indeed, the parties to an insurance contract “are free to select the types of risks to be covered.” Id. Likewise, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Ledbetter v. Concord General Corp., 95-0809, p. 4 (La.1/6/96), 665 So.2d 1166, 1169. Accordingly, an insurance company is entitled to limit its liability and to change or amend coverage through attached endorsements so long as the coverage provided by those endorsements does not conflict with statutory law or public policy. See Edwards v. Daugherty, 03-2103, p. 23 (La.10/1/04), 883 So.2d 932, 947.
*252 In interpreting an insurance contract, we are mindful, “[fjirst and foremost, ... that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code.” Sims v. Mulhearn Funeral Home, Inc., 07-0054, p. 7 (La.5/22/07), 956 So.2d 583, 588-89. Accordingly, “courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation set forth in our Civil Code.” Sumner v. Mathes, 10-0488, p. 5 (La.App. 4 Cir. 11/24/10), 52 So.3d 931, 934, citing Peterson v. Schimek, 98-1712, pp. 4-5 (La.3/2/99), 729 So.2d 1024, |n 1028-29. Under La. C.C. art.2046, “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”
Importantly, an insurance contract is to be construed as a whole; each of its provision is to be interpreted in light of the other provisions in the contract. Sims, 07-0054, p. 8, 956 So.2d at 589. The Sims Court made clear that “[o]ne provision of the contract should not be construed separately at the expense of disregarding other provisions.” Id. (citations omitted.) It further indicated that “an insurance policy [should not] be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.” Id. (citations omitted.) Accordingly:
When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written. See, LSA-C.C. art.2046; Hill, 05-1783 at 3, 935 So.2d at 694; Peterson, 98-1712 at 4-5, 729 So.2d at 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms. Cadwallader, 02-1637 at 4, 848 So.2d at 580; Succession of Fannaly, 01-1355 at 4, 805 So.2d at 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties’ intent. Edwards, 03-2103 at 12, 883 So.2d at 941; Succession of Fannaly, 01-1355 at 4, 805 So.2d at 1138; Peterson, 98-1712 at 5, 729 So.2d at 1029.
Id., 07-0054, pp. 8-9, 956 So.2d at 589.
The determination of whether a contract is clear or ambiguous is a question of law. Orleans Parish School Bd. v. Lexington Ins. Co., 12-1686, p. 9 (La.App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212. While ambiguous policy provisions are generally construed against the insurer and in favor of coverage,[7] the “[a]mbiguity must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.” Burmaster v. Plaquemines Parish Government, 10-1543, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 312, 317, citing Louisiana Ins. Guar. Ass’n v. Interstate Fire, 93-0911, p. 6, 630 So.2d 759, 763 (citing La. C.C. art. 2050).
As we explained in Burmaster.
If, after applying the other rules of construction an ambiguity remains, the *253 ambiguous provision is to be construed against the drafter and in favor of the insured. Interstate Fire, [93-0911, p. 6,] 630 So.2d at 763. In case of doubt that cannot be otherwise resolved a provision in a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. C.C. art. 2056. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. Cadwallader v. Allstate Ins. Co., 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. This strict construction principle applies only if the ambiguous provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must not only be susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Id. The fact that a term is not defined in the policy itself does not alone make that term ambiguous. Id., p. 4, 848 So.2d at 581; see also Am. Deposit Ins. Co. v. Myles, 00-2457, p. 7 (La.4/25/01), 783 So.2d 1282,1287.

Id.

With these principles in mind, we examine the provisions of the Century policy.
1^DISCUSSION
Century maintains that its policy provides coverage of $25,000 for plaintiffs assault and battery claims, or in the alternative, bars coverage altogether for the claims in this lawsuit. It contends that the trial court erred in finding ambiguities in the policy insofar as the assault and battery exclusion, combined with the Endorsement, clearly reflect the parties intent to afford limited coverage for an assault and battery claim, which includes claims against Bayou for the failure to warn, failure to provide adequate security and failure to insure the safety of its patrons. We agree.
At the outset, we note that assault and battery exclusions are routinely enforced by our courts. See, e.g., Hickey v. Centenary Oyster House, 97-1074 (La.10/20/98), 719 So.2d 421; Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166; Lawson v. Straus, 95-1537, p. 7 (La.App. 4 Cir. 3/14/96), 673 So.2d 223, 227, n. 3 (“assault and battery exclusions ... are far from unknown to the insurance industry and have been enforced in numerous reported decisions”). As the Second Circuit recently court noted:
Our review of the jurisprudence reveals that the policy provisions in [assault and battery exclusion] cases are sometimes similar but infrequently identical. However, the conclusion we draw from the overwhelming majority of cases is that insurers that have assault and battery exclusions in their policies are generally dismissed from suits against their insureds arising from injuries or deaths following an assault or battery. This is true regardless of the theory of recovery put forth by the plaintiff-whether it be negligence, intentional tort, nuisance, premises defect, or the like.
Hudson v. Jager Bomb LLC, 47,501, pp. 7-8 (La.App. 2 Cir. 11/14/12), 107 So.3d 712, 717. Accordingly, unless it is ambiguous, the assault and battery exclusion is to be enforced as written. See, e.g., Howell v. American Cas. Co. of Reading, PA, 11496— 0694, p. 16 (La.App. 4 Cir. 3/19/97), 691 So.2d 715, 726 (“if the exclusion unambiguously excludes coverage, then we must enforce that contractual language”).
Here, we find Century’s assault and battery exclusion to be clear and unambiguous; it plainly and unequivocally states that the insurance provided by Century’s policy does not apply to “bodily injury” arising from “an actual, threatened or al *254 leged assault and battery,” or “the failure of any insured ... to prevent or suppress any assault and battery.”[8] This preclusion of coverage extends to “any other cause of action or claim arising out of or a result of,” inter alia, an assault and battery or the failure to prevent an assault and battery. (Emphasis added.) The assault and battery exclusion, therefore, would bar coverage for all of the claims asserted in this lawsuit, no matter how artfully various theories of recovery are alleged, absent any other modifying provision in the policy.[9]
The policy, however, is modified by the Endorsement, which is the focus of this lawsuit. The clear and unambiguous provisions of the Endorsement reinstate coverage “on a limited basis” for the “[s]pecific coverage excluded under CGL 1704” (the assault and battery exclusion). The Endorsement clearly and unambiguously reinstates coverage for assault and battery claims, but only up to the limits provided by the Endorsement of $25,000 “per occurrence.” We^Jj^therefore, find that Century is liable for assault and battery claims up to its limits of $25,000.
Included within the Endorsement is limited coverage for claims concerning “the failure ... to prevent or suppress any assault or battery” given that the Endorsement plainly states that the “specific coverage excluded under” Form 1704 “is reinstated.” Thus, coverage for all of the acts or omissions listed in the assault and battery exclusion (items l(a)-(f)) are reinstated by the Endorsement’s provision that it “does not ... remove any exclusion in the other forms of the policy unless stated on [the Endorsement].” Among those acts or omissions is subpart 1(b)-coverage for “the failure ... to prevent or suppress any assault and battery.”
The Endorsement likewise reinstates coverage for the remaining acts or omissions listed in part 1, including the “catchall” phrase of subpart 1(f) — “any other cause of action arising out of or as a result of’ the other acts or omissions listed in l(a-e). Thus, for example, while section 1(d) provides that the insurance does not apply to “bodily injury” arising from “the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery,” the Endorsement reinstates that coverage. Accordingly, should a claim pertaining to the failure to secure medical treatment necessitated by an assault or battery arise, the Endorsement would limit coverage to the stated $25,000 policy limits.
We take note, as do several of the parties to this appeal, that the Endorsement has a definitions section, specifically defining the terms “assault” and “battery.” No definition section, however, is provided in Form 1704. That the Endorsement defines what constitutes an assault and a battery has no bearing on |1fithe issue of *255 coverage and in no way affects the coverage reinstated by Form 1717a. It simply clarifies what is meant by an “assault” or a “battery.”
It is thus clear that the Endorsement is intended to reinstate limited coverage for all claims arising out of or in any way connected to an assault and battery, no matter how the various claims are alleged. It follows, therefore, that claims pertaining to the failure to prevent or suppress an assault or battery, like the other acts or omissions excluded by Form 1704, are reinstated by the Endorsement, up to the Endorsement’s limits of $25,000.[10] In construing Century’s policy, this is the only reasonable conclusion, particularly given that our jurisprudence clearly indicates that claims for failing to suppress an assault or battery are subsumed by an assault and battery exclusion.
Alexander v. Barflies, Inc., 96-2177 (La.App. 4 Cir. 1/15/97), 687 So.2d 603, for example, a case involving the death of a patron of a bar who was shot outside the bar, dealt with an assault and battery exclusion barring coverage for an “[a]ssault and battery, whether caused by or at the instruction of, or at the direction of or negligence of the insured, his employees, patrons or any causes whatsoever.” Id., 96-2177, p. 2, 687 So.2d at 604. (Emphasis supplied.) The plaintiff (the decedent’s parent) argued that the cause of action did not arise out of the assault or battery but “out of acts or omissions in connection with the prevention or suppression of assault and battery.” Id. In rejecting that argument, the Court stated:
This contention relates to plaintiffs argument that Barflies, Inc.’s culpability arises out of its failure to warn |17the decedent of the unsafe nature of the neighborhood surrounding the tavern and the failure of Barflies to provide proper security as though the failure to warn and the lack of security somehow caused the decedent’s death independent of the assault and battery. There is no question that the decedent died as a result of an assault and battery, in this case a gunshot. In order for the plaintiff to recover from Barflies, Inc. she must show that the acts or omissions of Barflies somehow were the cause or a contributing cause of the assault and battery. Therefore, even if the plaintiff were to prove that Barflies had a duty to warn or to provide better security, she would only succeed in showing that Barflies was a “cause” of the assault and battery, thereby falling under the Sphere Drake policy universal assault and battery “any causes whatsoever” exclusion.
Id, 96-2177, pp. 2-8, 687 So.2d at 604-05.
The Alexander was case cited, with approval, by this Court’s later decision of Washington v. Spurlock, 97-2411 (La.App. 4 Cir. 12/17/97), 708 So.2d 1378, which considered an exclusion similar to that involved in this matter. In Washington, the plaintiff was a patron in a bar when she was shot by unknown robbers. The bar’s insurer filed a motion for summary judgment based on an exclusion in the policy for injuries “[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery.” Id, 97-2411, p. 1, 703 So.2d at 1379. One of the arguments asserted by the plaintiff was that her injuries “occurred prior to the battery in allowing the robbers onto the *256 premises late at night.” Id., 97-2411, p. 2, 703 So.2d at 1379. This Court again rejected that contention and held:
... [I]n the instant case, respondent can only recover if she can show that the actions or omissions of Spurlock caused or were a contributing cause of the battery. Afterall [sic], she was injured by the battery, not by the act of allowing the robbers onto the premises or by the refusal of Spurlock to comply with the demands of the robbers. Had either or both of those acts occurred, but the battery not ensued, plaintiff would have sustained no | isinjuries. It is only to the extent that the acts or omissions of Spurlock may have caused or contributed to the battery that plaintiff could have a claim against Spurlock or his insurer. Therefore, following the clear and unambiguous language of the policy, respondent’s injuries clearly arise out of the battery, not out of any acts or omissions of Spurlock, except as they may relate to the battery. Simply put the respondent was injured by a battery-no battery, no injuries. As we did in Barflies, Inc., we must give effect to the clear and unambiguous language of the policy excluding battery damages where to do so leads to no absurd consequences.
Id., 97-2711, pp. 2-3, 703 So.2d at 1379.
Like we noted in Alexander and Washington, in the instant matter, plaintiff was injured by the shooting (battery) and not by any alleged act of Bayou in failing to warn him of the dangers of the area, failing to provide adequate security and/or failing to take measures to insure his safety. Similarly, as we found in Alexander, if plaintiff was able to prove that Bayou owed a duty to warn, provide adequate security or to insure plaintiffs safety, he would only succeed in showing that Bayou “was a ‘cause’ of the assault and battery, thereby falling under the [Century] policy universal assault and battery [‘any other cause of action or claim’] exclusion.” Alexander, 96-2177, p. 3, 687 So.2d at 605. Accordingly, under the clear and unambiguous provisions of the policy (including the Endorsement), coverage for all claims arising out of the battery on plaintiff, including the alleged failure to provide a safe premises (and all claims related thereto), are subject to the reinstated policy limits of $25,000.
We next consider whether the Endorsement’s inclusion of subpart A.2. renders the Endorsement ambiguous. As noted herein, A.2 provides:
Item A.8. Failure to Maintain Secure or Safe Premises in CGL 1701 is not applicable to claims arising out of assault and battery defined in C. Definitions below. (Emphasis supplied.)
| iaForm 1701, referenced therein, is an endorsement to Century’s policy which provides several other exclusions to coverage, none of which are applicable to this matter. Subpart A.8 of that form excludes from coverage “ ‘bodily injury, or ‘property damage’ arising out of, caused by, resulting from, or alleged to be related to any insured’s failure to complete ‘your work.’ ” There is no mention in Form 1701 (or anywhere else in the policy) to the “failure to maintain secure or safe premises.” It is evident that the inclusion of subpart A.2 and its reference to an unrelated provision was either a mistake or an error in the drafting of the policy. However, this does not render the entirety of the Endorsement ambiguous or otherwise alter the clear intent of the Endorsement, i.e., to provide limited coverage for assault and battery claims.
The trial court found that the inclusion of subpart A.2 and the lack of any corresponding provision in Form 1701 together *257 create an ambiguity in the policy.[11] The trial court then ruled that the policy provides coverage of $1 million. It is unclear from the transcript (and the judgment) whether the trial court ruled that the $1 million liability limit extends to plaintiff’s assault and battery claims or whether, as all parties opposing Century’s motion appear to agree, extends only to plaintiffs claims related to the failure to maintain a secure or safe premises.[12] The motions for summary judgment filed by Bayou, Accor and plaintiff all sought a determination that Century’s policy does not limit coverage for claims for the failure to maintain a secure or secure premises. Accordingly, it appears that the |2nCourt’s finding is that the policy’s $1 million limit applies only to those claims arising out of the failure to maintain a secure or safe premises. In our review, this can be the only reasonable interpretation of the court’s ruling, in light of the various motions. And, as we have already concluded, the policy provides coverage for assault and battery claims only up to its limits of $25,000. Therefore, under no scenario do we find that the policy affords coverage of $1 million for assault and battery claims.
There appear to be no cases which discuss the narrow issue of whether a reference to a non-existent provision in an endorsement renders the endorsement or the policy ambiguous or operates to create coverage which is not specifically afforded by the policy. Construing Century’s policy as a whole “so as [not] to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms,”[13] we find that the only reasonable interpretation to be given to the policy, including its assault and battery exclusion and the Endorsement, is that the extraneous reference- to a non-existent provision of the policy does not render the policy or the Endorsement ambiguous or alter the clear intent of the policy — to limit coverage for all claims arising out of or in any way related to an assault and battery. Had Form 1701 A.8 actually referenced claims related to the “Failure to Maintain Secure or Safe Premises,” it is clear that those claims would be excluded from coverage, given that Form 1701 pertains to exclusions. Accordingly, Form 1701 A.8 would have barred coverage for claims for the failure to |21 maintain or secure the premises. The only reasonable interpretation of the Endorsement, even had Form 1701 included claims arising out of the failure to maintain or secure the premises, is that those claims, too, would be reinstated by the Endorsement, again, up to the limits of $25,000.[14]
The trial court appears to have relied heavily on Proshee v. Shree, Inc., 04-1145 (La.App. 3 Cir. 2/2/05), 898 So.2d 939.[15] That reliance is not altogether misplaced, as Bayou maintains. The policy involved *258 in Proshee (also incidentally, a Century policy) differs from the policy in the instant matter; while the assault and battery exclusion in the two polices are identical, in Proshee, the policy had an additional exclusion specifically barring coverage for the “Failure to Maintain Secure of [sic] Safe Premises.”[16] Id., 04-1145, p. 2, 898 So.2d at 941. In Proshee, the plaintiff was beaten and robbed in parking lot of a hotel at which he was a patron. After he filed suit against the hotel, its insurer intervened and asserted that its policy barred coverage for the plaintiffs claims, including the assault and battery claim and plaintiffs claims regarding the hotel’s failure to provide adequate security and adequate lighting and the failure to notice the dangerousness of the premises.[17] The exclusions in the policy were the subject of a motion for summary judgment filed by the insurer.
Applying both exclusions to the facts of the case, the Proshee court found no coverage under the policy, rejecting all of plaintiffs arguments that the policy contained ambiguities and citing both the Washington and Alexander cases. In so | ¡^finding, the court expressly rejected the plaintiffs argument that the assault and battery exclusion did not apply to “a premises defect case (i.e., the lack of security in an area with a history of criminal activity).” Id., 04-1145, p. 8, 893 So.2d at 944. The Proshee court focused almost entirely on the assault and battery exclusion, finding that the plaintiffs “attempt to have the assault and battery exclusion deemed inapplicable” to his “premises defect case” to be “disingenuous at best.” It then held:
The exclusion clearly extends to “the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery”.... And, even if one finds that the robbery or failure to prevent the assault or battery is a non-assault or battery related cause, the policy exclusion clearly and unambiguously states that Century shall have no duty to defend any claim where “any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause”.... In such case, Maise v. Cat’s Meow, Inc., 96-1998 (La.App. 4 Cir. 10/16/96), 683 So.2d 846, is instructive. In that case, the Fourth Circuit held that irrespective of the fault alleged by plaintiff (whether negligence, intentional act or otherwise), because their injuries arose out of a battery, the policy provided no coverage because of its assault and battery exclusion.

Id.

The only discussion in Proshee of the exclusion for the failure to maintain a safe or secure premises concerns the insurer’s duty to defend (and the court held that there was no duty to defend because of both the assault and battery exclusion and the exclusion dealing with the failure to maintain a safe or secure premises). It is clear that the Proshee court’s conclusion is that all claims arising out of the plaintiffs shooting were barred by the assault and battery exclusion (including his premises defect claims) and not the exclusion dealing with the failure to maintain a secure or *259 safe premises. We read Proshee to further reiterate that the assault and | ^battery exclusion incorporates all claims related thereto, including those arising out of an insured’s alleged failure to maintain a secure or safe premises.
We conclude that, although the Endorsement contains a reference to a nonexistent provision in the policy, it is of no consequence to the coverage under the policy in this case. Century’s policy, as a whole, clearly and unambiguously provides limited coverage of $25,000 for all claims related to plaintiff’s battery, no matter how those claims are couched. Accordingly, the lack of a provision in Form 1701 A.8. dealing with the failure to maintain a secure or safe premises does not alter the overall coverage of the policy; claims related to the failure to maintain a secure or safe premises are so interrelated with the assault and battery exclusion that our jurisprudence considers them to be indistinguishable. We follow the well-settled rule that an “insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.” Orleans Parish School Bd. v. Lexington Ins. Co., 12-1686, p. 10 (La.App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212, citing Interstate Fire & Cas. Co., 93-0911, 630 So.2d at 763-64.
As a final note, the Endorsement provides that Century “will pay, with respect to any claim we investigate or settle, or any “suit” against an insured we defend, the expenses we incur associated with the coverage provided by this form. These expense payments will reduce the limits of insurance available and provided by this form.” The duty to defend, though “ends when [Century has] used up the applicable limit of insurance ... in the payment of judgments or settlements or expenses for the coverage provided by this form.” When “a policy has a provision that the insurer’s duty to defend the insured ends upon the exhaustion of the policy l^limit ..., then that policy provision must be enforced, and the insurer’s duty to defend ends upon exhaustion of the policy limit.” Howell, 96-0694, pp. 15-16, 691 So.2d at 726, citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988). There is no dispute that Century’s policy limits have been exhausted by the payment of attorney’s fees incurred in the defense of this suit. Accordingly, its duty to defend ended when its policy limits were exhausted.
CONCLUSION
For the reasons stated herein, and based upon our de novo review of the record, the trial court’s judgment is reversed, and this matter is remanded for further proceedings.
REVERSED AND REMANDED.

.The suit was answered by Accor Franchising North America, LLC (hereafter referred to as "Accor”), the proper party defendant. It is not the owner of the motel, but rather, the franchisor.

. The named insured under Century's policy is Bayou Hospitality d/b/a Motel 6 c/o Kish Desal.

. There is no dispute that Century has paid $25,000 in Bayou’s defense costs.

. The trial court indicated at the hearing on the Motions for Summary Judgment that it found an ambiguity in the policy as to whether it provides coverage of $1,000,000 or $25,000.

. At the September 20, 2013 hearing, the trial court also considered plaintiff's Motion for Partial Summary Judgment on the issue of comparative fault, deferring the issue for a later date.

. Form CGL 1701, entitled "Special Exclusions and Limitations Endorsement,” does not contain any subpart dealing with the “Failure to Maintain Secure or Safe Premises.” Likewise, Item A.8. of Form CGL 1701 is entitled "Failure to Complete ‘Your Work’ ” and deals with an exclusion for " ‘bodily injury’, or 'property damage’ arising out of, caused by, resulting from, or alleged to be related to any insured’s failure to complete ‘your work.’ ”

. See Cadwallader v. Allstate Ins. Co., 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580.

. Similar language has been held to be clear and unambiguous. In fact, in the case on which the trial court's judgment was based, Proshee v. Shree, Inc., 04-1145 (La.App. 3 Cir. 2/2/05), 893 So.2d 939, the Third Circuit found the identical language was “clear and unambiguous.” Proshee, 04-1145, p. 6, 893 So.2d at 943. See also, Hudson v. Jager Bomb LLC, 47,501, pp. 7-8 (La.App. 2 Cir. 11/14/12), 107 So.3d 712, 717; Williams v. Andrus, 11-239, p. 6 (La.App. 3 Cir. 10/5/11), 74 So.3d 818, 823; Mouton v. Thomas, 05-926, p. 6 (La.App. 3 Cir. 3/1/06), 924 So.2d 394, 398.

. As for Century’s duty to defend, the policy contains provisions stating that Century has no duty to defend an insured against any suit seeking damages for bodily injury where “any actual ... injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause....”

. See, e.g. Certain Underwriters at Lloyd’s London v. C.A. Turner Const. Co., Inc., 112 F.3d 184, 189 (5th Cir.1997) (“[b]ecause we concluded that the pollution exclusion clause was unambiguous ... we likewise conclude that the buy-back clause is subject to only one reasonable interpretation.”)

. As appears from the transcript of the hearing, the trial court relied heavily on Proshee, and concluded that the ambiguity related to the "provision [in the] policy [that doesn’t] exist", i.e. the Endorsement’s inclusion of subpart A. 2.

. Indeed, the judgment simply finds that Century’s policy "provides coverage up to its policy limits of $1,000,000 for the claims made by plaintiff in the Petition for Damages against Bayou Hospitality.”

. Sims, 07-0054, p. 8, 956 So.2d at 589.

. This finding is supported by our case law indicating that those claims are subsumed in the assault and battery exclusion.

. At the hearing on the Motions for Summary Judgment, the trial court commented that it found "the coverage is a million dollars and specifically because of the different [sic] in the language in Proshee versus Shree the language in this case and the fact that I’ve already found ambiguity as relates to certain other provisions in the policy....”

. The exclusion barred coverage for claims "arising out of, caused by, resulting from, or alleging, in whole or in part, any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight assault, theft, or crime.” Id., 04-1145, p. 2, 893 So.2d at 941.

. The hotel then added the insurer as a third party defendant by the hotel, seeking defense and indemnity.