STOKER, Judge.
This is a suit for personal injury damages sustained by plaintiff, Stephen J. Saucier. Defendant, Alton A. Belgard, inflicted the injuries by shooting plaintiff three times with a pistol. Belgard was convicted of attempted second degree murder and his conviction and sentence were affirmed by the Louisiana Supreme Court. State v. Belgard, 410 So.2d 720 (La.1982.)
The trial court awarded plaintiff $75,000 in general damages and $1757.42 in special damages. Defendant appealed. We affirm.
Able counsel represented defendant-appellant at the trial of this damage suit, but he represents himself in this appeal. Defendant has filed a brief before this court in proper person. We will give defendant-appellant the benefit of attempting, as best we can, to discern the substance of his defenses as he states them. In order to deal with these defenses we will first set forth in its entirety the well written reasons for judgment handed down by the able trial judge:
“REASONS FOR JUDGMENT
“Plaintiff, Stephen J. Saucier, brought this suit against defendant, Alton A. Bel-gard, seeking damages for injuries sustained by him in a shooting incident.
“On August 30, 1980, Stephen J. Saucier, and his two children by a previous marriage were visiting at the home of Judy Belgard and her two children, Angela and Robert. The home was located at 5526 Holloway Road in Pineville, Louisiana.
“Angela was at home with her mother that day. Robert was visiting with his father, Alton A. Belgard, the estranged husband of Judy Belgard, and would be returning home later that evening.
“Mr. Belgard and his wife had been separated for some time, and Mr. Saucier and Mrs. Belgard had been seeing each other socially. Mr. Belgard was known to his wife to be very jealous and to have a very volatile temper.
“When Mr. Belgard brought Robert home that evening and entered the house, Mr. Saucier and his children were still there. Immediately, Mr. Belgard became abusive and attacked Mr. Saucier. Mr. Saucier proved to be too much of a match for Mr. Belgard, so he drew the .38 caliber handgun which he had concealed in his clothing and shot Mr. Saucier three times.
“The first shot hit Mr. Saucier in the right leg knocking him to the ground. Then, Mr. Belgard shot him twice more in the back, hitting him in the left shoulder and the neck. The bullet that entered at the base of the neck to this day remains lodged in the hilum of the lung not far from Mr. Saucier’s heart. (Footnote omitted.)
“Mr. Saucier was conscious the entire period of the shooting and was in great pain. He was also aware that his two children were witnessing this brutal attack. He suffered pain and discomfort for the entire three days that he was hospitalized.
“Mr. Saucier was forced to miss four (4) full weeks of work and could only perform some of his assigned duties for two (2) other weeks during his recuperation.
“Aside from having the potential life threatening bullet still lodged in his chest, Mr. Saucier’s main complaint upon leaving the hospital was pain and tenderness in his left arm along the ulnar side of the forearm with generalized numbness and tingling of the entire extremity.
“This problem continued for about a month when Mr. Saucier’s treating physician Dr. Villemez referred him to a neurosurgeon, Dr. Babson Fresh.
“Dr. Fresh’s examination revealed a marked hypersensitivity to both light touch and pin prick beginning approxi *193 mately 10 cm. above the olecranon and extending down to within 4 cm. of the wrist.
“In October 1981, Mr. Saucier complained that his arm had not improved at all in the past year. Dr. Fresh then referred Mr. Saucier for further evaluation to Dr. David Kline, an expert in neurosurgery at LSU Medical Center in New Orleans. Dr. Kline in his report to Dr. Fresh stated:
‘I think his injury has occurred, most likely, at a C8, dorsal 1 root to the lower trunk level rather than a mere peripheral level. I do not think that an operation would improve this situation and since there would be some risks involved with it, I certainly would not advise that. I think that with further time, his mild deficit should improve further.’
“There is no telling just how long it will take for the condition in Mr. Saucier’s arm to heal, if indeed it ever will completely heal.
“Defendant’s attack on plaintiff was unprovoked and was an intentional tort.
“There will be judgment in favor of plaintiff and against defendant for $75,-000.00 general damages for his pain, suffering, embarrassment, mental anguish and physical disability, and for $1,757.42, the proven special damages.
“Expert witness fees in the amount of $125.00 for Dr. Fresh and $100.00 for Dr. Villemez will be taxed as costs.
“All costs to be assessed against defendant.
“Alexandria, Louisiana, this 15th day of June, 1982.”
DEFENDANT-APPELLANT’S POSITION
A formal written petition for appeal was filed on defendant’s behalf by his trial counsel with a motion to proceed in forma pauperis. An order of appeal was signed granting a devolutive appeal and defendant was permitted to proceed in forma pauper-is. Defendant-appellant filed with this court a pleading denominated “PETITION FOR WRITS OF CERTIORARI, PROHIBITION AND MANDAMUS” in which he asks for reversal of the trial court and rejection of plaintiff’s demands. Inasmuch as defendant-appellant is before this court on a regular appeal, we treat his pleading as his brief on appeal. The substantive portions of that pleading are as follows:
“HI
“This judgment was the result of a confrontation that Mr. Stephen J. Saucier had with petitioner on August 30, 1980, at the residence of Mrs. Judy Belgard. This confrontation left Mr. Saucier with three bullet wounds. Mr. Saucier was Hospitolize (sic) for about three (3) days, and approximately for one (1) year there after had to go to have check ups by docters. (sic)
“IV
“Petitioner is appealing the judgment awarding Mr. Saucier $76,757.42 from the Ninth Judicial District Court, Parish of Rapides which is too much; in the Judge’s reason for judgment he stated that (page 2, lines 7-9) Mr. Saucier was forced to miss four (4) full weeks of (sic) and could only -perform some of his assigned duties for two (2) other weeks during recuperation. Mr. Saucier stated during trial that (page 128 Line 30 & 31, and page 129, line 1-5) Q. Now during that time you did not lose any wages, is that right? A. No I did not. Q. And do you know why you didn’t lose any wages? A. The company, as a policy, doesn’t do that. They ... you know, their key personnel, they take good care of them. So Mr. Saucier was granted a not so needed rest.
“V
“Petitioner attest that the Rapides Parish Sheriff Department, nor his counselor ran a check on the gun that Mr. Saucier was shot with to determine who the gun belonged to which was very important to petitioner’s defense and by not *194 doing so damaged petitioner’s defense beyond repair”
“VI
“Petitioner ask This Honorable Court to put themselves in his position on the night of August 30, 1980. Petitioner walks into the front door with anticipation of the enjoyment he will receive with his son at the movie later that evening. Then, without warning he is confronted with the reality of his eleven (11) year old daughter sitting on a man’s knee and from where petitioner is standing look like he is molesting his daughter. Petitioner (sic) reaction was that of any father similar situated!
“VII
“In the instant case, there are numberous (sic) of error that are ‘plain’ on the face of the record and this Court has the power to rule on these errors. Petitioner invokes the ‘Plain Error Doctrine’, and would like for this Honorable Court to review all objection that was over ruled by the court.
“WHEREFORE, petitioner prays that there be judgment rendered in favor of petitioner, rejecting the plaintiff’s demands.”
LIABILITY ISSUE
In paragraphs V, VI, and VII defendant-appellant attacks the finding of the trial court that he committed an intentional tort in assaulting plaintiff for which he is legally liable. With reference to paragraph V quoted above, the record discloses that Mr. Belgard admits that he shot Mr. Saucier twice, but Belgard testified that Saucier shot himself first. The evidence preponderates in favor of the finding that Belgard shot Saucier three times, and Belgard was the only person who did any shooting. We presume that defendant’s assertions contained in paragraph V are meant to infer that he did not own the pistol he fired at Saucier and, perhaps, that the pistol belonged to Saucier. We fail to see how mere ownership of the weapon would be' material or significant so long as Belgard is found to be the aggressor. The preponderance of evidence indicates that Saucier greeted Belgard by extending his hand for a handshake and introducing himself. There is no evidence that Saucier was the aggressor. Belgard was clearly the aggressor.
In paragraph VI defendant-appellant attempts to excuse his actions. We are not at all impressed by Belgard’s suggestion that he thought his daughter was being molested by Saucier.
In paragraph VII defendant-appellant refers to “plain” errors on the face of the record and states he invokes the “Plain Error Doctrine”. We know of no such doctrine, but we state further that we note no errors plain on the face of the record.
QUANTUM ISSUE
Paragraph III and IV appear to be directed toward the special damages which were awarded in the amount of $1,757.42. Perhaps paragraph III may be interpreted as a complaint that the general damage award of $75,000.00 was too high. We are of the opinion that the trial court did not abuse its discretion in awarding this amount.
Paragraph IV of defendant’s brief appears to be a complaint of an award for lost income. The trial court awarded $1,757.42 in special damages, but we find that it includes no award for lost income. This amount is fully supported by bills in evidence for hospitalization, physicians’ services, medicines and other medical expenses. Therefore, no award for lost wages was made. We interpret the trial court’s comments in its reasons for judgment concerning the time lost from work as having been made to indicate the extent of Saucier’s injury and the length of time he was disabled that he could either not work at all or was on limited duty. It was not stated to support an award for lost wages, but rather to support the award for general damages.
*195 CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.