907 So.2d 116 (2005)
Claude Allen BENNETT and Tessie Bennett, on Behalf of the Minor Child, Kimberly Curtis
v.
Curtis RAGON and Martha Ragon, A/K/A Ragon's Grocery and Bar, ABC Insurance Company, Def Insurance Company, and XYZ Insurance Company.
No. 2004 CA 0706.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
*118 E. Lynn Singleton, Greensburg, Harry L. Shoemaker, III, Baton Rouge, Counsel for Plaintiffs/Appellants Claude Allen Bennett, Et al.
Al M. Thompson, Jr., New Orleans, Counsel for Defendant/Appellee Essex Insurance Company.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
In this appeal, we consider whether a commercial general liability insurance policy provides coverage for damages claimed in this wrongful death suit. The trial court found the policy offered no coverage, finding the policy's assault and battery exclusion was applicable. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
Curtis Ragon and his wife, Martha Ragon, owned and operated a business, known as Ragon's Grocery and Bar, located in the Parish of St. Helena. The Ragons' house was located near a building, which housed their grocery store and bar. In the early morning hours of November 27, 1997, while Mr. Ragon was sleeping in his house, Mrs. Ragon woke him and alerted him that someone was in his pickup truck. The truck had been parked between the house and the grocery store.[1] Mr. Ragon rushed to his front door and saw that someone was backing up his truck. Assuming the driver was attempting to steal his truck, he went back into his house and picked up a loaded shotgun. When he returned outside, the truck was moving backwards around an oak tree. The front of the truck faced the driveway that led to a nearby highway. Mr. Ragon was standing about thirty to forty feet from the truck.
Mr. Ragon testified that because it was dark, he could not see who was driving the truck. Mr. Ragon decided to aim the shotgun up in the air and fire a "warning shot." He testified that he purposefully shot to try to scare the driver. Mr. Ragon stated that after he fired the first "warning shot," the driver of the truck "put it forward, [and] was fixing to take off." He explained that when the truck started to turn towards the driveway, he fired another "warning shot." According to Mr. Ragon, the driver "took off down the driveway [away from him]," spinning its tires. Because the truck was traveling faster than before, Mr. Ragon perceived that the driver had heard the warning shots. Since the driver continued to proceed down the driveway towards the highway, Mr. Ragon thought his warning shots had not been effective. He thereafter attempted to shoot out one of the truck's tires by firing a third shot. He lowered his gun and aimed for the truck's left, rear tire. After he shot, the truck came to a rest at the edge of his driveway, and he realized the driver had been shot.
On the evening before the shooting, Anita Quinlan, her boyfriend, Billy McGruff, and McGruff's sister and brother-in-law, Brenda and Wade Allen, were patrons of *119 the Ragons' bar. After drinking and socializing for hours, they left the bar premises. It is undisputed that Quinlan was intoxicated. McGruff drove to his nearby home alone, and the Allens followed in a separate vehicle. Upon arriving at the house, the Allens realized that Quinlan was not with McGruff, so they began looking for her. They returned to the parking lot of the bar twice looking for her but did not find her. The following morning, they were notified that Quinlan was dead, having been shot by Mr. Ragon.
Plaintiffs, Claude Allen Bennett and Tessie Bennett, legal representative of Quinlan's minor child, Kimberly Curtis, filed a wrongful death suit against the Ragons, who were doing business as Ragon's Grocery and Bar, and Essex Insurance Company ("Essex"), which issued a policy of commercial general liability insurance to the Ragons. Essex denied liability, asserting that its "assault and battery" exclusion precluded coverage for any injuries arising out of Mr. Ragon's assault and battery of Quinlan.
Thereafter, the trial court signed an order of dismissal, with prejudice, relative to all of plaintiffs' claims against the Ragons and Ragon's Grocery and Bar with reservation of plaintiffs' rights as to Essex. In particular, this order decreed that the plaintiffs' rights against the Ragons and Ragon's Grocery and Bar were "reserved only to the extent that they are insured by [Essex]."[2] Following a trial on the merits relative to plaintiffs' claims against Essex, the trial court found that Mr. Ragon's acts constituted an assault and/or a battery and that the Essex policy did not provide coverage for plaintiffs' claims, reasoning as follows:
An assault and/or battery only requires the presence of general criminal intent. [Mr. Ragon] testified he fired two warning shots in an effort to scare whoever was taking his truck. He knew the shotgun was loaded with buckshot. He stated the truck sped up after the second shot and even spun the tire on the truck. He intended to shoot out the left rear tire, (sic) with the third shot. [Mr. Ragon's] testimony and actions clearly indicate he intended to use some degree of force upon [Quinlan] in an effort to get her to stop. At a minimum he wanted to scare her. [Mr. Ragon's] own recollection of the events supports a finding that she heard one or both of the first shots fired by [him]. It is virtually impossible to reach any conclusion other than [Mr. Ragon] committed an assault on [Quinlan]. Furthermore, it appears that Essex is correct in its assertion that a battery would have been committed had [Mr. Ragon] only shot the vehicle driven by [Quinlan]. See State in Interest of H.L.F., [97-2651 (La.App. 4th Cir.5/20/98), 713 So.2d 810].
[For these reasons,] this court finds [Quinlan] was killed as a result of bodily injuries received from the acts of [Mr. Ragon.] Those acts constituted an assault and/or a battery.
Accordingly, the trial court ordered judgment in favor of Essex, dismissing plaintiffs' remaining claims. Plaintiffs have appealed, asserting the trial court erred in finding that the "assault and/or battery" exclusion of the Essex policy bars coverage for their claims related to the accidental shooting of Quinlan.

II. ANALYSIS

A. Standard of Review
On appeal, the parties dispute the applicable standard of review. Appellants assert *120 the applicable standard is de novo review, and appellee asserts that the trial court was faced with a purely factual issue concerning whether an assault or battery occurred, with its findings of fact being subject to the manifest error standard of review.
The issue of whether the Essex policy provides coverage for the plaintiffs' claims presents a question of law. Appellate review of legal questions simply involves a de novo determination as to whether the trial court's decision was legally correct. Sumrall v. Bickham, 03-1252, p. 7 (La.App. 1st Cir.9/8/04), 887 So.2d 73, 78, writ denied, 04-2506 (La.1/7/05), 891 So.2d 696. However, in determining whether Mr. Ragon's actions constituted an assault or battery, the trial court was required to make certain factual findings regarding Mr. Ragon's knowledge and intent. Appellate review of these factual findings is governed by the manifest error  clearly wrong standard. Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993).

B. General Principles of Insurance Policy Interpretation
An insurance policy is an agreement between the parties and should be construed according to general rules of contract interpretation. Edwards v. Daugherty, 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 940. The judiciary's role in interpreting insurance contracts is to determine the common intent of the parties to the contract. Id. Unless the words of the policy have acquired a technical meaning, they are to be construed using their plain, ordinary, and generally prevailing meaning. See La. C.C. art.2047; Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. The agreement must be enforced as written if the policy wording at issue is clear and expresses the intent of the parties. Edwards v. Daugherty, 03-2103 at p. 12, 883 So.2d at 941. An insurance company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. Edwards v. Daugherty, 03-2103 at p. 23; 883 So.2d at 947. The exclusionary provisions of an insurance contract are strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. Ledbetter v. Concord General Corp., 95-0809, p. 4 (La.1/6/96), 665 So.2d 1166, 1169. The rules of construction, however, do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Edwards v. Daugherty, 03-2103 at p. 941, 883 So.2d at 932. Using these principles, we now address the pertinent policy language.

C. Assault and/or Battery Exclusion
The Essex policy provides:
This insurance does not apply to any claim, suit, cost or expense arising out of:
* * *

D. ASSAULT AND/OR BATTERY:
Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.
The policy does not define either "assault" or "battery." In the civil context, however, assault is generally defined as the "threat of a battery." Fournette v. Tran, 00-0805, p. 4 (La.App. 4th Cir.7/11/01), 792 So.2d 870, 873, writ denied, 01-2731 (La.1/4/02), 805 So.2d 211. *121 Battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact." Caudle v. Betts, 512 So.2d 389, 391 (La.1987). Intent, in this context, has been held to mean that the actor either consciously desires the physical result of his act or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981). The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. Caudle v. Betts, 512 So.2d at 391.
In the criminal context, Louisiana Revised Statutes 14:33 defines battery as "the intentional use of force or violence upon the person of another." Louisiana Revised Statutes 14:36 defines assault as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."
In the present case, employing either the civil or criminal definitions of assault and battery, we find no error in the trial court's determination that Mr. Ragon's actions constituted an assault and/or a battery. We find no manifest error in the trial court's determination that Mr. Ragon intended to use some amount of force upon Quinlan; the facts clearly demonstrate Mr. Ragon intended an offensive contact when he fired the shotgun. Mr. Ragon testified he was fully awake and knew what he was doing when he fired the shotgun. His testimony demonstrates he consciously desired to make contact with the truck at which he aimed. Mr. Ragon also testified that he was aware that the gun was loaded with buckshot and knew that buckshot spreads when fired. Thus, the pertinent inquiry is not whether Mr. Ragon specifically intended to shoot Quinlan, but whether he intended to inflict a harmful or offensive contact. Mr. Ragon's knowledge that the buckshot would spread when shot in the direction of the truck indicates he knew that the result of the buckshot coming into contact with Quinlan was substantially certain to follow from his actions of shooting in the general direction of the moving truck. The trial court's finding that he possessed the requisite intent to commit a battery is supported by these facts.
Additionally, the record supports the trial court's finding that Mr. Ragon assaulted Quinlan by his actions of threatening her with harmful contact. He testified that when he fired the shotgun, he was trying to scare her. The trial court reasonably concluded that Mr. Ragon intended to place Quinlan in fear of receiving a battery.
Plaintiffs' present suit seeking damages for Quinlan's wrongful death clearly arises from Mr. Ragon's assault and battery of Quinlan. The trial court properly concluded that the assault and/or battery exclusion of the policy excluded coverage for plaintiffs' claims. 
III. CONCLUSION
For these reasons, we affirm the trial court's judgment dismissing plaintiffs' suit. Costs of this appeal are assessed against plaintiffs-appellants, Claude Allen Bennett and Tessie Bennett.
AFFIRMED.
NOTES
[1] Mr. Ragon testified that although it was not his normal practice, the keys to the truck had been left in the truck's ignition. He also stated that the store's roof was being replaced and a carpenter had loaded roofing materials in the pickup truck.
[2] The order also dismissed all claims against another defendant-insurer that is not involved in this appeal.