STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0712

BRADLEY B. WOMACK AND ELIZABETH CAVALIER WOMACK,
INDIVIDUALLY AND ON BEHALF OF MARK WOMACK, AND
ERROLL E. STRAHAN AND TRICIA SCOTT STRAHAN,
INDIVIDUALLY AND ON BEHALF OF ERROLL SCOTT

VERSUS

MAR JAY PRODUCTIONS, L.L.C. d/b/a SHOOTER'S BAR & GRILL
AND FIRST FINANCIAL INSURANCE COMPANY

Judgment Rendered: ___**FEB 2 1 2020**___

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2014-12146

The Honorable William H. Burris, Judge Presiding

* * * * *

Patrick H. Hufft
New Orleans, Louisiana
Arthur J. Brewster
Metairie, Louisiana

Attorneys for Plaintiffs/Appellants,
Bradley B. Womack and Elizabeth
Cavalier Womack, individually and
on behalf of Mark Womack and Erroll
E. Strahan and Tricia Scott Strahan,
individually and on behalf of
Erroll Scott

R. Edward Blanchard
John Futrell
Travis L. Bourgeois
New Orleans, Louisiana
Sidney W. Degan, III

Attorneys for Defendant/Appellee,
First Financial Insurance Company

* * * * *

BEFORE:  HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

Appellants, Bradley B. Womack and Elizabeth Cavalier Womack, individually and on behalf of Mark Womack, and Erroll E. Strahan and Tricia Scott Strahan, individually and on behalf of Erroll Scott, appeal a trial court judgment granting appellee's, First Financial Insurance Company, summary judgment and dismissing all claims against it.[1] For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 25, 2013, Erroll Scott, son of Errol E. Strahan and Tricia Scott Strahan, and Mark Womack, son of Bradley and Elizabeth Womack, were attending a concert at Mar Jay Productions, L.L.C. d/b/a Shooter's Bar & Grill (Mar Jay). During the concert, at least two fights occurred on the premises owned by Mar Jay. At approximately, 1:15 a.m. on December 26, 2013, a third fight began in the bar, but eventually spilled outside. One of the participants in the fight pulled out a .40 caliber handgun and randomly fired shots into the crowd, striking eight people, including Erroll Scott and Mark Womack, who both died from their injuries. Appellants filed suit against Mar Jay, claiming it was liable for the injuries to Erroll Scott and Mark Womack and for the wrongful death damages to Appellants. They allege Mar Jay committed various acts of negligence, including failing to provide adequate security measures, failing to call the police, allowing an unreasonably dangerous condition to exist on the premises, and other acts of negligence. Appellants also filed suit against First Financial Insurance Company

---

[1] Appellants also list Jayme Lynn Womack as an appellant. However, we note that Jayme Lynn Womack has never been named as a plaintiff and is not a party to these proceedings.

2

(First Financial), alleging that it provided a policy of insurance to Mar Jay covering the risks sued upon herein.[2]

First Financial issued commercial general liability policy number 612F000907 (the Policy) in which Mar Jay is listed as the named insured. First Financial filed a motion for summary judgment on October 24, 2014, claiming that every claim asserted against it was precluded from coverage by the assault and battery exclusion contained in the policy. The policy was attached to the motion for summary judgment. Due to ongoing discovery, the hearing on the motion for summary judgment was continued until April 23, 2015. On that date, the hearing on the motion for summary judgment was continued without date. On October 15, 2018, noting that La. C.C.P. art. 966 had been amended, First Financial filed a supplemental memorandum in support of its motion for summary judgment, attaching an affidavit signed by Mitchell H. Jacobs, Appellants' petitions, and First Financial's answers.

Appellants opposed the motion for summary judgment, attaching excerpts of the depositions of Jessica Saybe, an employee of Mar Jay, and Gerald P. Hellmers, a security guard of Mar Jay and witness to the shooting, a surveillance video, an affidavit of Nicholas Lea, a witness to the shooting, and one page of the Policy containing the assault and battery exclusion. Appellants asserted that the facts of the case did not fall within the assault and battery exclusion as claimed by First Financial.

First Financial filed an objection to the surveillance video being admitted, since it was not properly authenticated or enumerated in the categories of exhibits that may be considered for summary judgment purposes under La. C.C.P. art

---

[2] Appellants filed a First Amending and Supplemental Petition correcting the name of Tricia Strahan Scott to Tricia Scott Strahan in the original petition and the caption. Appellants also filed a Second Supplemental and Amending Petition, naming new defendants alleged to be the owners and managers of Mar Jay and Jamieon Chatman, the gunman on the night of the incident.

966(A)(4). The trial court held a hearing on December 19, 2018, and sustained the objection to the surveillance video, thereby not considering it for summary judgment purposes. The trial court further granted First Financial's motion for summary judgment, finding there was no duty to defend or indemnify, and dismissed all Appellants' claims against First Financial. A judgment was signed in accordance therewith on January 9, 2019. It is from this judgment that Appellants appeal.

## ASSIGNMENT OF ERROR

Appellants' only assignment of error is that the trial court erred in granting First Financial's motion for summary judgment since there are issues of fact as to the liability of First Financial notwithstanding the purported policy exclusion.

## SUMMARY JUDGMENT

We first recognize that First Financial filed its motion for summary judgment on October 24, 2014. Louisiana Code of Civil Procedure article 966 was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 provides, "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act." As the motion for summary judgment at issue in this matter was pending as of October 24, 2014, we apply the prior version of Article 966.

Louisiana Code of Civil Procedure article 966(B)(2) (prior to amendment by 2015 La. Acts, No. 422) provides that summary judgment "shall be rendered forthwith" when "there is no genuine issue as to material facts, and that mover is entitled to judgment as a matter of law."[3] After adequate discovery, a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for

---

[3] Now La. C.C.P. art. 966(A)(3).

purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. arts. 966(B)(2) & (C)(1) (prior to amendment by 2015 La. Acts, No. 422).[4] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. *See* La. C.C.P. art. 966(A)(2).

The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422).[5] If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422). If the nonmoving party fails to make this requisite showing, there is no genuine issue of material fact, and summary judgment should be granted. *See* La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. *LeBlanc v. Bouchereau Oil Co., Inc.,* 2008-2064 (La. App. 1st Cir. 5/8/09), 15 So. 3d 152, 155, *writ denied,* 2009-1624 (La. 10/16/09), 19 So. 3d 481.

---

[4] Now La. C.C.P. art. 966(A)(3).

[5] Now La. C.C.P. art. 966(D)(1).

5

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Hines v. Garrett,* 2004-0806 (La. 6/25/04), 876 So. 2d 764, 765 (*per curiam*). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Willis v. Medders,* 2000-2507 (La. 12/8/00), 775 So. 2d 1049, 1050 (*per curiam*).

In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Jackson v. Wise,* 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So. 3d 845, 850, *writ denied,* 2018-0785 (La. 9/21/18), 252 So. 3d 914.

## LAW AND DISCUSSION

Interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. *Prejean v. McMillan,* 2018-0919 (La. App. 1st Cir. 2/28/19), 274 So. 3d 575, 578.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. *Miller v. Superior Shipyard and Fabrication, Inc.,* 2001-2683 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 203. However, an insurer has the burden of proving that

6

a loss falls within a policy exclusion. Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Fouquet v. Daiquiris & Creams of Mandeville, L.L.C.*, 2010-0233 (La. App. 1st Cir. 9/13/10), 49 So. 3d 44, 47 (*citing Sensebe v.Canal Indemnity Co.*, 2009-1325 (La. App. 1st Cir. 2/24/10), 35 So. 3d 1122, 1125-26, *writ granted*, 2010-0703 (La. 6/25/10), 38 So. 3d 358.

An insurance policy is an agreement between the parties and should be construed according to general rules of contract interpretation. *Edwards v. Daugherty*, 2003-2103 (La. 10/1/04), 883 So. 2d 932, 940. The judiciary's role in interpreting insurance contracts is to determine the common intent of the parties to the contract. *Edwards*, 883 So. 2d at 940. Unless the words of the policy have acquired a technical meaning, they are to be construed using their plain, ordinary, and generally prevailing meaning. *See* La. C.C. art. 2047; *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580. The agreement must be enforced as written if the policy wording at issue is clear and expresses the intent of the parties. *Edwards*, 883 So. 2d at 941. An insurance company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. *Edwards*, 883 So. 2d at 947. The exclusionary provisions of an insurance contract are strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. *Ledbetter v. Concord General Corp.*, 95-0809 (La. 1/6/96), 665 So. 2d 1166, 1169. The rules of construction, however, do not authorize a perversion of the words or the

7

exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. *Edwards*, 883 So. 2d at 941. Using these principles, we now address the pertinent policy language.

The First Financial liability policy contains an exclusion, which provides:

D.  This insurance does not apply to:

    a.  Assault, Battery or other Physical Altercation

      "Bodily injury" or "property damage":

      (1) Expected or intended from the standpoint of any insured.

      (2) Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.

      (3) Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

      (4) Arising in whole or in party out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

\* \* \* \* \*

G.  The exclusions added in paragraphs D, E and F of this endorsement apply to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

H.  The following are added to the Definitions Section of this policy:

8

> "Assault" means any attempt or threat to inflict injury upon the person of another, or any display of forces such as would give a person reason to fear or expect immediate bodily harm.

> "Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

Appellants assert that there are material issues of fact as to: (1) whether the assault and battery exclusion applied to the incident in this matter; (2) whether the actions of the tortfeasor amounted to intentional conduct or gross negligence; (3) whether the trial court's interpretation of the assault and battery exclusion was overly broad and/or against public policy; and (4) whether the term "physical contact" as defined in the Policy encompasses the negligent discharge of a firearm that unintentionally strikes random victims.[6] Appellants argue issues one, three, and four together, and we will treat them accordingly.

**Assault and Battery Exclusion, Physical Contact, and Public Policy**

Appellants argue that the assault and battery exclusion is inapplicable to the present case since there was no physical contact between the gunman and the two victims. Lea testified by affidavit that the victims were at least 100 feet away from the gunman when they were struck by gunfire and that there was no physical contact between the gunman and any of the shooting victims. Hellmers testified by deposition that the victims were not involved in the altercation prior to the shooting, and there was no physical contact between the victims and the gunman.

---

[6] With regard to at least two of these arguments, Appellants refer to a surveillance video, which was attached to their opposition memorandum. The trial court struck the surveillance video as being inappropriate summary judgment evidence. The Appellants did not assign as error the trial court's ruling on the exclusion of the surveillance video. Matters neither assigned as error nor argued, or, matters assigned as error but not argued may be considered abandoned. *See* Uniform Rules-Courts of Appeal 2-12.4; *Ranson v. Cooper*, 2016-0029 (La. App. 1st Cir. 9/19/16), 228 So. 3d 1254, 1257 n.3. Therefore, we disregard any arguments pertaining to the surveillance video, which was not considered by the trial court.

Appellants claim that First Financial's definition of battery required physical contact, thereby creating an ambiguity which should be resolved in their favor.

Initially, we note that assault and battery exclusions are routinely enforced by our courts. *See Hickey v. Centenary Oyster House*, 97-1074 (La. 10/20/98), 719 So. 2d 421, 423; *Ledbetter*, 665 So. 2d at 1169-70; *Guste v. Lirette*, 2017-1248 (La. App. 1st Cir. 6/4/18), 251 So. 3d 1126, 1133. As the Second Circuit has noted:

> Our review of the jurisprudence reveals that the policy provisions in [assault and battery exclusion] cases are sometimes similar but infrequently identical. However, the conclusion we draw from the overwhelming majority of cases is that insurers that have assault and battery exclusions in their policies are generally dismissed from suits against their insureds arising from injuries or deaths following an assault or battery. This is true regardless of the theory of recovery put forth by the plaintiff-whether it be negligence, intentional tort, nuisance, premises defect, or the like.

*Hudson v. Jager Bomb LLC,* 47,501 (La. App. 2nd Cir. 11/14/12), 107 So. 3d 712, 717. A general liability insurance policy is not intended to cover injuries arising from intentional acts. *Hickey*, 719 So. 2d at 423. However, some policies contain an express exclusion for assault and battery, which has been held effective regardless of whether the insured was a participant in the altercation. *Hickey*, 719 So. 2d at 423. Accordingly, unless it is ambiguous, the assault and battery exclusion is to be enforced as written. *See, e.g., Howell v. American Cas. Co. of Reading, PA*, 96-0694 (La. App. 4th Cir. 3/19/97), 691 So. 2d 715, 726, *writs denied*, 97-1329, 97-1379, and 97-1426 (La. 9/5/97), 700 So. 2d 512, 515, and 518 ("if the exclusion *unambiguously* excludes coverage, then we must enforce that contractual language").

In *Bennett v. Ragon*, 2004-0706 (La. App. 1st Cir. 3/24/05), 907 So. 2d 116, the defendant attempted to prevent his truck from being stolen. In doing so, he testified that he fired a warning shot and then attempted to shoot out the tires of the

vehicle. Instead, the defendant accidently shot the driver of the truck. The insurer of the defendant asserted that the assault and battery exclusion applied and sought dismissal from the suit, which was granted after the trial. *Bennett*, 907 So. 2d at 119. Applying the manifest error standard, this court agreed with the trial court that the actions of the defendant constituted an assault and battery, relying on either the civil or criminal definitions of assault and battery since the policy contained no specific definitions. *Bennett*, 907 So. 2d at 121. We noted that the defendant intended some offensive contact when he fired the shotgun. Thus, the pertinent inquiry was not whether the defendant intended to shoot the driver of the truck, but whether he intended to inflict a harmful or offensive contact. *Bennett*, 907 So. 2d at 121.

The plaintiff in *Fournette v. Tran*, 2000-0805 (La. App. 4th Cir. 7/11/01), 792 So. 2d 870, 873, *writ denied*, 2001-2731 (La. 1/4/02), 805 So. 2d 211, also argued that there was a question of fact as to whether an assault and/or battery occurred triggering the policy's assault and battery exclusion. A store employee attempted to block a shoplifter's path while pointing a gun at the ground. He did not point the gun at anyone and did not threaten to shoot anyone. The shoplifter pushed the employee out of the way while leaving the store, causing the gun to accidentally discharge. The plaintiff, an innocent bystander, was accidentally shot as he was entering the store. The Fourth Circuit held that the assault and battery exclusion was unambiguous and that the insurer would not be liable for any injuries resulting from an assault and/or battery. *Fournette*, 792 So. 2d at 873-74. The plaintiff argued that the intent of the gunman was a genuine issue of material fact. *Fournette*, 792 So. 2d at 874. The employee's own deposition testimony determined that he intended to commit an aggravated assault against the shoplifter. *Fournette*, 792 So. 2d at 873-74.

11

The evidence submitted by First Financial to support the motion for summary judgment was the Policy and the pleadings. The petition alleges that the gunman "pulled out a .40 caliber handgun and began firing shots into the crowd." We agree with the trial court that the act of firing a .40 caliber handgun into a crowd falls within the definition of the assault and battery exclusion of the Policy. Although the evidence in the present case does not include the deposition of the gunman, it is alleged that the gunman fired a gun into a crowd, striking eight and killing two individuals. Therefore, it is evident that the gunman intended to commit an assault against the persons present, even if the intended target was different from the individuals struck by his gunfire.

In *Nastasia v. Sylvan Inc.*, 617 So. 2d 128, 129 (La. App. 5th Cir. 1993), a First Financial assault and battery exclusion (similar to Subsection (3) of the assault and battery exclusion at issue in the present case) was at issue, which at the time provided:

> It is agreed and understood that this Insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

A fight broke out at a night club among patrons. The plaintiff was struck in the face with a glass beer bottle, even though he alleged he was not involved in the altercation. At the time, the policy did not contain definitions of either assault or battery. However, the court found these terms to be unambiguous. *Nastasia*, 617 So. 2d at 129. The court also noted that even though the plaintiff was an innocent bystander, there was no requirement that an assault and battery be directed at a specific person. *Nastasia*, 617 So. 2d at 130. Therefore, summary judgment in favor of the insurer was affirmed.

The Louisiana Supreme Court addressed the issues before this court in *Jones v. Estate of Santiago*, 2003-1424 (La. 4/14/04), 870 So. 2d 1002, 1010, and set forth the following principles:

> An insured party who shoots someone, generally, is not entitled to insurance protection because a shooting is ordinarily considered an intentional act intended or expected to cause bodily injury. This principle is explained in 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, *Louisiana Civil Law Treatise: Insurance Law and Practice* § 164 at 344 (2d ed.1996), as follows: "Insureds who pull loaded guns and shoot other persons have not found the courts receptive to their exculpatory explanations, even in defense of the insurer's motion for summary judgment."

Furthermore, in *Cavin v. Elliot*, 597 So. 2d 1255, 1257 (La. App. 3rd Cir. 1992), the court observed:

> Louisiana courts have consistently held that the aggressive act of pulling a loaded gun and firing it at a third party, in and of itself, supports the conclusion that the defendant/insured intended the resulting injuries because such consequences are almost certain to occur as a result of such actions.

The only counter evidence in the present case is the testimony of Lea, who stated that the victims were at least 100 feet away from the gunman when they were struck by gunfire and that there was no physical contact between the victims and the gunman, and the testimony of Hellmers, who stated that the victims were not involved in the altercation prior to the shooting and that there was no physical contact between the victims and the gunman. We do not find that the testimony of either Lea or Hellmers supports the conclusion that the actions of the gunman fall outside the definition of the assault and battery exclusion of the Policy.

We note that the assault and battery exclusion in the Policy does not require both an assault **and** a battery. It specifically applies to "any 'assault' **or** 'battery' committed or attempted by any person." Without even determining if there was a battery in this instance, the facts are sufficient to indicate there was an assault as defined by the Policy. The act of pulling out a loaded gun and firing into a crowd

"would give a person reason to fear or expect immediate bodily harm" as contained in the definition of "assault" in the Policy.

We also believe that Appellants' reading of the Policy definition of "battery" is too narrow. The definition requires "physical contact" but is not limited to person-to-person contact. The United States Fifth Circuit Court of Appeal has observed, "In Louisiana, '[b]attery does not require direct bodily contact between the actor and the victim.'" *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 196 (5th Cir. 2002) (*quoting* Frank L. Maraist & Thomas C. Galligan, *Louisiana Tort Law* § 2–6(a), at 28 (1996)). "The contact may be with an inanimate object controlled or precipitated by the actor, such as the surgeon's scalpel, a bullet or even a thrown hamburger. The victim need not be aware of the contact when it occurs." *Swope*, 281 F.3d at 196 (*quoting* Maraist & Galligan, *Louisiana Tort Law* § 2–6(a), at 28, *citing Saucier v. Belgard*, 445 So. 2d 191 (La. App. 3rd Cir. 1984); *England v. S & M Foods, Inc.*, 511 So. 2d 1313 (La. App. 2nd Cir. 1987)).

Appellants also assert that there is a genuine issue of material fact as to whether Mar Jay committed other acts of negligence. Therefore, they allege that the assault and battery exclusion does not preclude coverage for all the claims of negligence asserted. *Fouquet*, 49 So. 3d at 48, also involved the interpretation of an assault and battery exclusion and multiple claims of negligence. The assault and battery exclusion in *Fouquet* stated that the insurance did not apply due to "bodily injury" arising from an (1) "assault", "battery" or "assault and battery" committed by any person; (2) the failure to suppress or prevent an "assault", "battery" or "assault and battery"; (3) the failure to provide an environment safe from "assault", "battery" or "assault and battery"; (4) the failure to warn of the dangers of the environment which could contribute to "assault", "battery" or "assault and battery"; (5) "assault", "battery" or "assault and battery" arising out of

the negligent hiring, supervision, or training of any person; and (6) the use of any force to protect persons or property whether or not the "bodily injury" or "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of the insured. *Fouquet*, 49 So. 3d at 47-48. A bar patron was stabbed several times by another patron. The plaintiff argued that the assault and battery exclusion did not apply to all his claims, such as preventing criminal acts, acting as a reasonable person would under similar circumstances, and failing to assist the plaintiff. *Fouquet*, 49 So. 3d at 48. This court disagreed finding that the plaintiff read the exclusionary language too narrowly and that there were no "separate injuries," only those that stemmed from the stabbing. *Fouquet*, 49 So. 3d at 48-49.

Appellants in this matter also argue that the assault and battery exclusion does not apply to Mar Jay's negligence for allowing the participants in two previous altercations to remain inside the bar; for failing to hire a police security detail; and for failing to intervene in the two previous altercations. We find these arguments to be similar to those in *Fouquet*. The assault and battery exclusion in the Policy at issue specifically states that it does not apply to bodily injury:

> (3) Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

> (4) Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.
> (R. 100).

Although the assault and battery in the present case is not identical to the one involved in *Fouquet*, we find that the language of the assault and battery exclusion applies to the other negligence claims made by Appellants.

15

Appellants also aver that it is against public policy to exclude conduct that is negligent from coverage. Appellants rely on *Young v. Brown*, 27,018 (La. App. 2nd Cir. 6/21/95), 658 So. 2d 750, 751, *writ denied*, 95-1811 (La. 10/27/95), 662 So. 2d 1, wherein a tortfeasor accidentally shot the plaintiff as he fell into the plaintiff. The Second Circuit reversed the summary judgment in favor of the insurer. However, the exclusion at issue in *Young* excluded "intentional or criminal acts." *Young*, 658 So. 2d at 752. The court found the use of the term "criminal acts" to be ambiguous and susceptible to more than one meaning, since "criminal acts" could be intentional or negligent. *Young*, 658 So. 2d at 754. The court held that an exclusion of liability insurance coverage for non-intentional, inadvertent acts of criminal negligence violates Louisiana's public policy established for the protection of innocent injury victims. *Young*, 658 So. 2d at 754.

We find *Young* to be distinguishable from the facts of the present case. The policy exclusion at issue is not one for "criminal acts" but specifically for a defined assault or battery. Furthermore, the action in *Young* was a non-intentional, inadvertent act. In the present case, although the gunman may not have intended to shoot the ultimate victims, it cannot be disputed that the act of firing a .40 caliber handgun into a crowd as alleged by Appellants is at a minimum an assault on those present and a battery on those individuals struck by the bullets. Therefore, we find that the assault and battery exclusion is applicable and excluded coverage for the claims of the Appellants.

**Negligent Homicide or Gross Negligence**

Appellants also argue that the actions of the gunman amount to negligent homicide, rather than an intentional tort. They assert that the gunman's actions in shooting into a crowd was gross negligence. Appellants relied upon the surveillance video, which was deemed inadmissible, and the affidavit of Lea to

support its argument. Lea testified that he saw Errol Scott at least 100 feet away from the gunman and that there was no physical contact between the gunman and Errol Scott or any other shooting victims, including Mark Womack. Lea also discussed what he saw on the video, which is also inadmissible. Relying on these statements, the Appellants argue that the gunman, "who was involved in the altercations, began firing his gun once they were outside, apparently not specifically or intentionally aiming at any person in particular, but simply firing his gun in a reckless manner. In doing so, he accidentally shot and killed [Errol] Scott and Womack." The affidavit of Lea does not support the Appellants' argument that the gunman accidentally shot the victims. The argument of counsel, no matter how artful, is not evidence. *Pamplemoussier, L.L.C. v. Poche*, 2012-1829 (La. App. 1st Cir. 9/13/13), 187 So. 3d 480, 482.

Furthermore, we find the cases relied upon by Appellant to be distinguishable. In *State v. McFerson*, 583 So. 2d 516, 519 (La. App. 3rd Cir.), *writ denied*, 588 So. 2d 113 (La. 1991), a defendant was convicted of negligent homicide in violation of La. R.S. 14:32, when he brought a friend's loaded gun into a crowded bar and it discharged, killing an innocent victim, when he pulled the gun out of his pants pocket. In *State v. Barberousse*, 458 So. 2d 569, 571 (La. App. 3rd Cir. 1984), *writ granted*, 468 So. 2d 565 (La. 1985), *aff'd*, 480 So. 2d 273 (La. 1985), a defendant was found criminally negligent when he fatally shot his sister after pulling out a loaded gun, cocking it, and pointing it at another person. According to the defendant, he was lowering the gun and attempting to uncock it when it discharged. The single bullet entered his sister's chest causing her death only moments later. In *State v. Parker*, 431 So. 2d 114, 115 (La. App. 1st Cir.), *writ denied*, 435 So. 2d 433 (La. 1983), a defendant was found criminally negligent after shooting through a door without looking believing that there was an

attempted entry into his home. The bullet struck an innocent person returning from running errands.

We find nothing in the record to establish that there was an accidental discharge of the gun in this matter. We find the actions of the gunman fall within the definition of an assault and/or battery as defined by the Policy. Therefore, there are no issues of fact to be resolved at trial, and the trial court did not err in granting First Financial's motion for summary judgment.

## CONCLUSION

For the above and foregoing reasons, we affirm the trial court's January 9, 2019 judgment granting summary judgment in favor of First Financial Insurance Company and dismissing all claims of Bradley B. Womack and Elizabeth Cavalier Womack, individually and on behalf of Mark Womack, and Erroll E. Strahan and Tricia Scott Strahan, individually and on behalf of Erroll Scott, against First Financial Insurance Company. All costs of this appeal are assessed to Bradley B. Womack, Elizabeth Cavalier Womack, Erroll E. Strahan, and Tricia Scott Strahan.

**AFFIRMED.**